The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



/S/ RUSS KENDIG

Russ Kendig
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: | ) CHAPTER 7 |
| | ) |
| JASON L. WISE, | ) CASE NO. 08-60318 |
| | ) |
| Debtor. | ) JUDGE RUSS KENDIG |
| | ) |
| | ) MEMORANDUM OF OPINION |
| | ) (NOT INTENDED FOR |
| | ) PUBLICATION) |

    Trustee Anne Piero Silagy ("Trustee") filed a notice of a sale of assets and Debtor objected. Contemporaneous with the objection, Debtor filed a motion to stay this case under the Servicemembers Civil Relief Act ("SCRA").[1] 50 U.S.C. app. §§ 501 et seq. Trustee is opposed to the stay. John J. Rutter, on behalf of Trustee, and David L. Smith and Robert H. Cyperski, attorneys for Debtor, participated in the March 7, 2011 hearing.

    The court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. 157(b)(2).

---

[1] The genesis of the SCRA dates back to World War I and the Soldiers' and Sailors' Relief Act, Pub.L. No. 65-103, 40 Stat. 440 (1918).

1

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTS

Debtor earns his livelihood from operation of a pick-up and delivery service, derived primarily from contracts with FedEx. He owns and operates JLW Transport ("JLW"), an Ohio entity, as part of this business. At the time of the bankruptcy filing, February 8, 2008, Debtor was not a member of the military.

On September 9, 2009, Trustee filed a notice of sale of Debtor's interest in the FedEx contracts. Debtor objected and an adversary proceeding resulted from the parties' dispute. Debtor argued the interests in the FedEx contracts belonged to JLW and were not his personal property. The court concluded to the contrary, resulting in a finding that the contracts were property of the estate.

Subsequently, on January 18, 2011, Trustee filed a second notice of sale of the estate's interest in the contracts. Debtor again objected and also filed a motion to stay the case based on Debtor's military service. Debtor enlisted postpetition in 2009 and is now serving in Iraq. His deployment is scheduled to end in February 2012.

It is not disputed that the contracts were Debtor's main source of income. As early as October 2009, Debtor indicated a desire to possibly purchase the assets from the estate. Trustee indicated that she did not receive an offer from Debtor until March 2011. Trustee has two other offers for the assets.

Inextricably connected to the sale issue is the value of a claim held by Amy Sorkin. Debtor purchased certain FedEx routes from her in 2007. She filed a claim in September 22, 2008 for $331,150 for breach of contract. This is, by far, the largest claim against the estate. Debtor filed an objection to the claim on March 4, 2011. Trustee's most recent notice of sale proposes to sell the routes to Amy Sorkin for cash, plus a waiver of her claim. Another purchaser made a strictly cash offer, which Trustee now deems the best offer. Debtor's offer for the assets is based on a cash offer combined with direct payment of certain claims and litigation of the Sorkin claim to reduce and/or eliminate it.

## LAW

I.    **The SCRA stay motion**

The question is whether Debtor is entitled to a stay of this case under the SCRA. The purpose of the SCRA is codified in section 502:

> (1)    to provide for, strengthen, and expedite the

2

08-60318-rk    Doc 79    FILED 03/31/11    ENTERED 03/31/11 15:22:52    Page 2 of 6

> national defense through protection extended
> by this Act . . . to servicemembers . . . to enable
> such persons to devote their entire energy to the
> defense needs of the Nation; and
>
> (2) to provide for the temporary suspension of judicial
> and administrative proceedings and transactions
> that may adversely affect the civil rights of service-
> members during their military service.

50 U.S.C. app. § 502. A plain reading leads the court to conclude that the goal of the statute is to provide a mechanism to permit servicemembers to focus on their military duties unhindered by the diversion of lawsuits and similar proceedings which threaten to adversely impact them.

To accomplish this goal, the SCRA provides for a stay. *See* 50 U.S.C. app. § 522. The stay can be authorized "[a]t any stage before final judgment in a civil action or proceeding in which a servicemember . . . is a party" provided the request for stay is accompanied by an explanation of how the servicemember's military duties impinge on participation in the proceeding, contains a date when the servicemember will be available, and includes a confirmation letter from the servicemember's commanding officer which also provides that leave is not authorized. Id. Courts find that the SCRA is to be 'liberally construed' to accomplish its purpose. *See* Royster v. Lederle, 128 F.2d 197 (6th Cir. 1942); Engstrom v. First Nat'l Bank, 47 F.3d 1459 (5th Cir. 1995) (citation omitted). A court has discretion to determine whether a stay applies based on the facts of the case. Boone v. Lightner, 319 U.S. 561 (1943). The burden of proof does not reside with a specific party: "courts called upon to use discretion will usually have enough sound sense to know from what direction their information should be expected to come." Id. at 1229. Under this guidance, the court finds that Debtor bore the burden of proof on his motion.

The SCRA does not mandate a halt to all activity against servicemembers, only those threatening an adverse impact. Trustee cited several cases which denied application of the stay based on a finding that no prejudice to the servicemember would result. *See, e.g.*, McCoy v. McSorley, 168 S.E.2d 202 (Ga. Ct. App. 1969) (determining stay was not appropriate when plaintiff was only seeking recovery from insurance policy); Kinsella v. Kinsella, 353 Mo. 661 (1944) (declining to institute the stay during an appeal of an order upholding a will on the finding that the interest of the servicemember, who was an heir under the will, was protected). Other courts, in the face of prejudice, have imposed a modified stay. *See* In re Walaschin, 260 B.R. 306 (Bankr. M.D. Fla. 2000); First Union Mortg. Corp. v. Rush (In re Rush), 1990 WL 10007403 (Bankr. S.D. Ga. 1990) (unreported). Courts have latitude to determine what is appropriate based on the circumstances of each case.

The court must determine if the sale of the property threatens Debtor with adverse

3

impact thereby warranting imposition of the stay. There is no doubt that Debtor's loss of the contracts, his income stream, would have an adverse impact on him. That simplification, however, ignores the fact that Debtor voluntarily sought the protection of the bankruptcy court in 2008. As part of the protection, Debtor's interests in property became property of the estate. Debtor gave up his property interests in exchange for the protection of the bankruptcy code and for the benefit of a discharge of his debts. That exchange often involves the liquidation of assets which flow in to the estate. It is folly to argue that a voluntary chapter 7 case is adverse to the debtor who initiated the case. The court finds no cause to stay the entire case based on Debtor's military service and will focus on one event, the sale.

Moreover, the sale is unlike a foreclosure or other legal actions in which the servicemember has rights in the collateral, such as the right to redeem. The filing of the case results in the creation of an estate. 11 U.S.C. § 541. At the time of filing, all of Debtor's property passed to the estate. 11 U.S.C. § 541(a). Debtors' property rights passed long before entry into the military or the sale motion. He now seeks to bid to purchase the estate's property, just like any other bidder, not pursuant to a right of redemption or any other legal right.

There is no doubt the contracts are property of the estate and Trustee has the right to sell those assets. The real question must focus on whether Debtor has any pecuniary interest in the sale entitling him to the right to be involved in the sale process. Most courts find a debtor lacks standing to object to a sale. *See, e.g.*, 60 East 80th Street Equities, Inc. v. Sapir, 218 F.3d 109 (2nd Cir. 2000); Pascazi v. Fiber Consultants, Inc., 2011 WL 310168 (S.D.N.Y. 2011); Willemain v. Kivitz, 764 F.2d 1019 (4th Cir. 1985); In re Cormier, 382 B.R. 377, 410 (Bankr. W.D. Mich. 2008) ('Debtors, particularly chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor.') (citations omitted)). Under this reasoning, Debtor cannot suffer an adverse impact from an inability to prosecute his objection because he does not have standing to bring the objection.

Debtor may argue that this case involves a situation where assets would revert to him, thereby providing standing for his objection. This argument is a red herring. The only way for Debtor to obtain the contract rights is through a purchase of the asset. This is distinct from a reversion of excess proceeds, which is a legal right.

The court now focuses on the question of whether Debtor has a right to participate in the sale, which Debtor has done through the submission of an offer. It is now the Trustee's duty to consider the offers and determine the highest and best offer for the benefit of creditors of the estate. The sale process is not set up to benefit Debtor, but the creditors of his bankruptcy estate. At the hearing, Trustee suggested that Debtor's offer was not the best offer for several reasons. First, Debtor's ability to obtain the financing was unclear.

4

Second, it was dependent on litigation of the Sorkin claim.[2] At the present time, there appears nothing that Debtor can do to advance his interest in the sale process beyond what he has done. The matter now rests with the trustee, who holds the entire bundle of rights.

Debtor has been afforded a full and fair opportunity to participate in this case and has been represented by counsel throughout. Courts disfavor last minute requests for SCRA stays in on-going litigation in cases on similar facts. *See* Comer v. City of Palm Bay (In re Comer), 265 F.3d 1186 (11th Cir. 2001); Gross v. Williams, 149 F.2d 84 (8th Cir. 1945).

Additionally, Debtor has not been earnest in his efforts to resolve this matter prior to entering the service. In his opposition to the initial sale, filed October 7, 2009, Debtor disputed the validity of Amy Sorkin's claim against the estate, yet failed to file an objection to the claim until March 4, 2011. Similarly, his response also suggested he would like to make an offer to the trustee, but he did not submit one until March 2011. A lack of diligence has also been grounds for rejecting the stay. *See* Boone, 319 U.S. 561; Comer, 265 F.3d 1186. The court found the contracts were property of the estate in August 2010. Silagy v. Wise (In re Wise), Case. No. 08-60318, Adv. No. 09-6095 (Bankr. N.D. Ohio August 31, 2010). The court held a hearing on September 20, 2010 and again Debtor indicated a desire to bid on the asset. Almost six months went by before he actually made an offer.

The confluence of the facts outlined above convince the court to deny Debtor's motion for a stay under SCRA.

Further, Debtor failed to meet the technical requirements of the statute. Section 522(b)(2) requires a request for a stay to include:

> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemembers will be available to appear.
>
> (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

---

[2] Debtor's ability to object to the claim also presents issues of standing. Generally, courts find chapter 7 debtors do not have standing to object to claims. *See* Normali v. O'Donnell (In re O'Donnell, 326 B.R. 901 (B.A.P. 6th Cir. 2005) (citations omitted) (unpublished); In re I & F Corp., 219 B.R. 483 (Bankr. S.D. Ohio 1998).

5

50 U.S.C. app. § 522. Debtor attached a personal affidavit and his deployment papers to his motion for a stay, but failed to include a communication from his commanding officer which satisfies section 522(b)(2)(B).

For the sum of the above reasons, the court will decline to enter a stay under the Servicemembers Civil Relief Act.

An order will be issued with this opinion.

#   #   #

**Service List:**

John J Rutter
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308

Robert H Cyperski, Aty
1201 30th St NW
Ste 102-B
Canton, OH 44709

David L Smith
101 Central Plaza South
Suite 1003
Canton, OH 44702

6

08-60318-rk    Doc 79    FILED 03/31/11    ENTERED 03/31/11 15:22:52    Page 6 of 6